137 Ariz. 360 (1983)
670 P.2d 1185
The STATE of Arizona, Appellee,
v.
Stephen BISHOP, Appellant.
No. 2 CA-CR 2893-3.
Court of Appeals of Arizona, Division 2.
June 29, 1983.
Rehearing Denied October 3, 1983.
*361 Robert K. Corbin, Atty. Gen. by William J. Schafer III and Diane M. Ramsey, Asst. Attys. Gen., Phoenix, for appellee.
Alexander, Hirsch & Saltsman by David F. Alexander, Apache Junction, for appellant.
OPINION
HOWARD, Chief Judge.
Appellant was convicted of conspiracy to escape and attempted escape. The evidence shows that he and another inmate of the Arizona State Prison, Jeffrey Lustig, had made dummies out of their clothes, papier mache, paint, and their own hair. On the evening of the attempted escape, they arranged the dummies in their bunks so that they would appear to be sleeping when the guards made the 9 p.m. body count, and hid themselves in a laundry cart that was pushed into the industrial yard. Their plan was foiled because a guard posted in one of the prison towers that was frequently left unmanned saw them in the cart.
Appellant and Lustig both chose to represent themselves and were appointed advisory counsel. Approximately two months before trial, Lustig was extradited to California, *362 so the trials of the two defendants were severed.
Appellant first contends that he was deprived of his right to represent himself. Before trial, appellant and Lustig moved that the court order the warden to give them access to the prison law library and to allow them to telephone at least one of the advisory counsel each week. Appellant also moved that the court order the warden to allow him to interview the state's witnesses, who were all prison employees, and examine the physical evidence that the state was going to use against him. The trial court judge denied all these motions, explaining that he would not interfere with the administration of the prison.
If appellant had shown that the warden had denied him access to the library or his advisory counsel, or had refused to allow him to interview the witnesses or inspect the state's evidence, then we might address the question of whether the courts should interfere in the prison's administration when necessary to preserve an inmate's Sixth Amendment rights. There is no indication in the record, however, that appellant was not afforded an opportunity to prepare his defense. In fact, the record shows that appellant ably defended himself, cited case law in his arguments to the court, and took the deposition of at least one of the state's three witnesses. Because there was no showing that appellant's right to represent himself was in any respect limited, the trial court did not err in refusing to grant appellant's motions.
Appellant also argues that he should have been given the opportunity to confer with or interview Lustig after he had been extradited to California. All his citations in support of this argument, however, refer only to his right to secure witnesses in his behalf. He has cited no authority for his argument that he should have been provided with the means and opportunity to interview or confer with Lustig. Moreover, while appellant states in his brief that Lustig could have been presumed to be a prospective witness on appellant's behalf, he never stated below that he wanted Lustig to appear as a witness. The court was not obligated to order Lustig's appearance sua sponte where appellant had never informed the court that he wanted Lustig as a witness.
Appellant argues that the trial court should have suppressed the physical evidence that was seized from his cell after he was caught because the prison regulations governing room searches were violated. The applicable regulation states in part, "Unless prohibited by security considerations, residents shall be present when room searches are conducted." Arizona Dept. of Corrections Internal Management Policy and Procedure Manual, No. 435, eff. 10/28/80.
Appellant's right to have illegally seized evidence suppressed does not arise when prison regulations are violated, but rather when his Fourth Amendment right to be free from unreasonable searches and seizures is violated. As a prisoner, appellant's Fourth Amendment rights are extremely limited, both because of the legitimate security needs of the prison and his diminished expectations of privacy. See United States v. Stumes, 549 F.2d 831 (8th Cir.1977). In Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Court held that a pretrial detainee has no Fourth Amendment right to be present during a room search. As a convicted prison inmate, appellant's Fourth Amendment rights are similarly reduced. Therefore, appellant did not have a constitutional right to be present when his cell was searched and items used by the state as evidence against him were seized. In addition, appellant could have had no reasonable expectation of privacy as to the dummy, which was the item he specifically objects to, because he had purposely placed it so as to be seen by the prison guards.
Appellant argues that his confession was not voluntary because it was made after a *363 prison official told him he would not be charged with any crime. Captain Alex Cordova testified at the voluntariness hearing that he chatted with appellant and Lustig after they were caught and said something to the effect that he didn't see how they could be tried for escape because they never got past the prison walls. Cordova did not remember whether this conversation took place before or after appellant was interrogated and made the confession. There was evidence from other prison officials who were present at the time that appellant did not have any conversations prior to the interrogation, but might have conversed with Cordova afterwards.
It is for the trial court to resolve any factual conflicts in the evidence. Its decision will not be disturbed unless there was clear and manifest error. State v. Tison, 129 Ariz. 526, 633 P.2d 335 (1981), cert. den. ___ U.S. ___, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982). There was evidence from which the trial court could have concluded that the conversation with Cordova occurred after appellant had already confessed and so could not have affected the voluntariness of the confession. Therefore, its finding that the confession was voluntary is affirmed.
Appellant also argues that the trial court erred in admitting evidence of his confession before the state had established the corpus delicti as to the conspiracy count. The rule is that there must be some evidence tending to prove the corpus delicti before a confession is admitted. State v. Bice, 127 Ariz. 312, 620 P.2d 227 (App. 1980). Assuming arguendo this rule applies to a charge of conspiracy even if the corpus delicti of the underlying crime has been established, here, the state had already presented evidence tending to prove the corpus delicti of the conspiracy charge in that it had shown that appellant and Lustig had acted together in attempting the escape. Therefore, the confession was properly admitted.
Finally, appellant contends that the trial court erred in allowing the indictment to be amended after the jury had been empaneled and opening arguments made. Count One of the indictment charged:
"That on or about the 18th day of April, 1982, Jeffery [sic] C. Lustig and Stephen Bishop, persons in the custody of the Department of Corrections, conspired to escape, and in furtherance of such plan:
1. Prepared dummies to be placed in their cells to avoid being missed at a prison count; and
2. Entered and hid in laundry carts to leave their cell area; in violation of A.R.S. 13-2503, 13-701 and 13-801, a class 5 felony."
After appellant brought the point to the state's and the trial court's attentions, the court granted the state's motion to add a citation to A.R.S. § 13-1003, the conspiracy statute.
The indictment, as originally written, adequately notified appellant of the charges he faced. The lack of a citation to the appropriate statute was a technical defect because its amendment did not change the nature of the offense charged or prejudice the defendant in any way. State v. Bruce, 125 Ariz. 421, 610 P.2d 55 (1980). Therefore, under Rule 13.5(b), Arizona Rules of Criminal Procedure, 17 A.R.S., it could be corrected whenever the matter was presented to the court.
Affirmed.
HATHAWAY and BIRDSALL, JJ., concur.