NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MARIO VINCENT MICALIZZI, *Appellant.*

No. 1 CA-CR 20-0111
FILED 2-18-2021

Appeal from the Superior Court in Mohave County
No. S8015CR201801587
The Honorable Richard D. Lambert, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Brian Coffman
*Counsel for Appellee*

Mohave County Legal Advocate, Kingman
By Jill L. Evans
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Chief Judge Peter B. Swann joined.

---

**T H U M M A,** Judge:

**¶1** Defendant Mario Vincent Micalizzi appeals his convictions and sentences for two counts of aggravated assault, and one count each of escape, resisting arrest and possession of a dangerous drug (methamphetamine). Because he has shown no error, Micalizzi's convictions and sentences are affirmed.

## FACTS AND PROCEDURAL HISTORY

**¶2** Mohave County Sheriff Detective M.A. conducted a traffic stop of an SUV Micalizzi was driving. Responding to M.A.'s questioning, Micalizzi said there was nothing illegal in the vehicle and consented to a search of the SUV. M.A. began the search on the driver's side. In a "void" under the steering column, M.A. found a sunglasses case containing syringes and methamphetamine. M.A. seized the case and returned to his patrol vehicle.

**¶3** As M.A. was securing the case, Micalizzi darted to the SUV and, with M.A. close behind, jumped into the driver's seat. M.A. reached into the SUV, grabbed Micalizzi's shirt, and commanded him "to get out." Refusing to comply, Micalizzi turned on the SUV's ignition and repeatedly slammed the driver's door on M.A.'s arm. M.A. let go and "jumped off it" when he saw Micalizzi shift the SUV into gear. Micalizzi then sped away, leaving his license with M.A.

**¶4** The State charged Micalizzi with two counts of aggravated assault, one a Class 2 dangerous felony, the other a Class 4 felony; escape in the first degree, a Class 4 felony; resisting arrest, a Class 6 felony; and possession of dangerous drugs, a Class 4 felony.[1] Before trial, Micalizzi moved to suppress evidence of the methamphetamine found in the SUV,

---

[1] The indictment also charged Micalizzi with possession of drug paraphernalia. The State dropped the charge before trial.

contending M.A.'s search violated his Fourth Amendment rights. After an evidentiary hearing, the court denied the motion to suppress.

¶5        The jury found Micalizzi guilty on all counts. The court imposed concurrent prison terms, the longest being 10.5 years. This court has jurisdiction over Micalizzi's timely appeal under Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) §§ 12-120.21(A)(1), 13-4031 and 13-4033(A) (2021).[2]

## DISCUSSION

### I.        Micalizzi Has Not Shown the Court Erred in Denying His Motion to Suppress.

¶6        Micalizzi argues the court erred in denying his motion to suppress because he did not consent to M.A.'s search of the SUV.[3] The exclusionary rule prohibits the introduction of evidence seized in violation of a person's Fourth Amendment rights. *State v. Hackman*, 189 Ariz. 505, 508 (App. 1997). The Fourth Amendment prohibits law enforcement from making unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 9 (1968). In general, a warrantless search is *per se* unreasonable under the Fourth Amendment, subject to various exceptions to the warrant requirement. *State v. Branham*, 191 Ariz. 94, 95 (App. 1997). A search following consent is one such exception. *State v. Davolt*, 207 Ariz. 191, 203 ¶ 29 (2004).

¶7        A ruling on a motion to suppress will not be reversed absent "clear and manifest error." *State v. Newell*, 212 Ariz. 389, 396 ¶ 22 (2006). This court only considers the evidence submitted at the suppression hearing, *State v. Blackmore*, 186 Ariz. 630, 631 (1996), and the superior court determines the credibility of witnesses, *State v. Ossana*, 199 Ariz. 459, 461 ¶ 7 (App. 2001).

¶8        At the suppression hearing, Micalizzi testified that, although he gave M.A. consent to search his person, he did not consent to a search of

---

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

[3] Although Micalizzi also asserts the State failed to prove his consent was voluntary, he makes no substantive argument supporting that assertion. Micalizzi therefore waived any challenge to the voluntariness of his consent. *See State v. Bolton*, 182 Ariz. 290, 298 (1995) ("Failure to argue a claim on appeal constitutes waiver of that claim.").

the SUV. M.A., however, testified to the contrary: "I first asked if I could search his person, which he consented. After searching his person, I then asked if I could search the vehicle, which he then consented." The superior court presumably found M.A. more credible, and Micalizzi has not shown that finding was error.

¶9        The record otherwise supports a finding that Micalizzi consented to a search of the SUV. *See State v. Fornof*, 218 Ariz. 74, 76 ¶ 8 (App. 2008) (this court views evidence from the suppression hearing "in the light most favorable to upholding the trial court's factual findings"). M.A. testified at the suppression hearing that Micalizzi "could see [the search] from [where] he was" and Micalizzi did not "say anything." The court found Micalizzi, based on his live testimony, "does not seem like a person who's intimidated or scared or anything like that." Micalizzi's failure to timely object to the search as it proceeded is explained by the reasonable inference that he consented to the search. Consistent with M.A.'s testimony, his written report memorializing the incident expressly indicated Micalizzi consented to both a search of his person and a search of the SUV.

¶10        The court's determination that Micalizzi consented to M.A.'s search of the SUV was supported by substantial evidence. Accordingly, the court did not err by denying the motion to suppress. *See State v. Berryman*, 178 Ariz. 617, 623 (App. 1994) (finding of fact cannot be clearly erroneous if substantial evidence supports it, even though substantial conflicting evidence also exists) (citing *Moore v. Title Ins. Co. of Minnesota,* 148 Ariz. 408, 413 (App. 1985)).

## II.    Sufficient Evidence Supports Micalizzi's Conviction for Possession of a Dangerous Drug (Methamphetamine).

¶11        Micalizzi contends the evidence was insufficient to support his conviction for possession of a dangerous drug. He specifically argues no evidence established he knew methamphetamine was in the SUV, or that he otherwise had dominion and control over the drug. *See* A.R.S. § 13-105(34) ("Possess" means "knowingly to have physical possession or otherwise to exercise dominion or control over property."). Micalizzi points to the hidden location where M.A. found the drugs and the fact someone else was the registered owner of the SUV.

¶12        This court's review of the sufficiency of evidence is limited to whether substantial evidence supports the verdict. *State v. Scott*, 177 Ariz. 131, 138 (1993); *see also* Ariz. R. Crim. P. 20(a)(1) (directing courts to enter judgment of acquittal "if there is no substantial evidence to support a

conviction"). Substantial evidence is such proof that "reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Mathers*, 165 Ariz. 64, 67 (1990) (quoting *State v. Jones*, 125 Ariz. 417, 419 (1980)).

**¶13** Sufficient trial evidence properly allowed the jury to determine that Micalizzi possessed the methamphetamine. First, he was the driver of the SUV, and the drugs were located under the steering column. Micalizzi was also unaccompanied. *See State v. Cox*, 214 Ariz. 518, 520 ¶ 10 (App. 2007) ("Constructive possession exists when the prohibited property 'is found in a place under [the defendant's] dominion [or] control and under circumstances from which it can be reasonably inferred that the defendant had actual knowledge of the existence of the [property].'") (citing cases). In addition, upon seeing M.A. return from the SUV with the sunglasses case, Micalizzi immediately ran to the SUV and then fled. Under these circumstances, the jury could reasonably infer Micalizzi knowingly possessed the methamphetamine. *See In re William G.*, 192 Ariz. 208, 213 (App. 1997) ("We recognize that absent a person's outright admission regarding his state of mind, his mental state must necessarily be ascertained by inference from all relevant surrounding circumstances.").[4]

## III. Micalizzi Has Not Shown the Superior Court Erred by Granting the State's Motion to Amend the Escape Charge, and Sufficient Evidence Supports His Escape Conviction.

**¶14** Micalizzi argues the superior court abused its discretion and violated his right to notice of the charges by allowing the State to amend the escape count on the first day of trial. *See State v. Johnson*, 198 Ariz. 245, 247 ¶ 4 (App. 2000) (order granting motion to amend indictment reviewed for abuse of discretion). In moving to amend, the State noted the indictment alleged Micalizzi "escaped or attempted to escape from custody from a correctional facility." The State referred to a "scrivener's error" in the allegation and asked that it be corrected to allege Micalizzi "escaped or attempted to escape from custody *or* from a correctional facility" to comply with the escape statute. The State also explained, "This case is completely about custody. There's no issue at all of the defendant being in a

---

[4] The superior court instructed the jury it could properly make such an inference based on Micalizzi's flight. *See State v. Cutright*, 196 Ariz. 567, 570, ¶ 12 (App. 1999) ("Instructing on flight is appropriate when a defendant's conduct manifests a consciousness of guilt.") *overruled on other grounds by State v. Miranda*, 200 Ariz. 67 (2001). Micalizzi does not challenge that instruction on appeal.

correctional facility." Over Micalizzi's objection, the court granted the State's motion.

¶15        An indictment may be amended to "correct mistakes of fact or remedy formal or technical defects." Ariz. R. Crim. P. 13.5(b). Because the Sixth Amendment requires adequate pretrial notice of criminal charges, *see* U.S. Const. amend. VI, "[a] defect may be considered formal or technical when its amendment does not operate to change the nature of the offense charged or to prejudice the defendant in any way," *State v. Bruce,* 125 Ariz. 421, 423 (1980). "In determining whether the offense was changed or the defendant prejudiced," a reviewing court considers whether the amendment violated a defendant's "right to 'notice of the charges'" and whether the defendant had an "'ample opportunity to prepare to defend against them.'" *Johnson,* 198 Ariz. at 248 ¶ 8 (quoting *State v. Barber,* 133 Ariz. 572, 577 (App. 1982)).

¶16        The applicable escape statute provides, in relevant part: "A person commits escape in the first degree by knowingly escaping or attempting to escape *from custody* or a juvenile secure care facility, juvenile detention facility *or an adult correctional facility* by [u]sing or threatening the use of physical force against another person." A.R.S. § 13-2504(A)(1) (emphasis added). Given this statutory language, the pre-amended indictment contained a typographical error in Count 3 by omitting the word "or" before "from an adult correctional facility." The resulting phrase, "escape from custody from a correctional facility," is non-sensical because, by statute, the term "custody" "does not include detention in a correctional facility." A.R.S. § 13-2501(3). At best, "escape from custody from a correctional facility" is a clumsy construction that is clarified by reading the escape statute, which the pre-amended indictment expressly and correctly identified. *See State v. Waggoner*, 144 Ariz. 237, 239 (1985) (indictment's reference to sentence enhancement statute is adequate notice of State's intent to seek enhanced sentence). Moreover, Micalizzi was present at the pre-trial suppression hearing and thus had actual notice that the escape charge was based on an allegation he escaped from "custody," not from custody "from a correctional facility." *See State v. Montes Flores*, 245 Ariz. 303, 307 ¶ 17 (App. 2018) ("Even when the nature of the offense is changed, if the defendant receives 'constitutionally adequate notice' of the modification, he is not prejudiced and the Sixth Amendment is not violated. In this inquiry, the issue is whether the defendant 'received actual notice of the charges' from any source.") (citation omitted). For these reasons, the amendment to the indictment did not change the nature of the escape charge, nor did it prejudice Micalizzi's defense. The superior court did not abuse its discretion.

¶17        Alternatively, Micalizzi argues no evidence established he was in custody when he left the scene of the traffic stop, meaning there was insufficient evidence to support his escape conviction. As relevant here, "custody" is defined as "the imposition of actual or constructive restraint pursuant to an on-site arrest." A.R.S. § 13-2501(3). Here, M.A. testified that, as he used both hands to try and pull Micalizzi out of the SUV, he told Micalizzi he was under arrest and to "stop." The evidence therefore sufficiently establishes that Micalizzi was "in custody," and substantial evidence supports his conviction for escape. *See State v. Stroud*, 209 Ariz. 410, 413 ¶ 11 (2005) (an officer telling "he was under arrest" while grabbing defendant's shirt collar before defendant "broke free" constitutes sufficient evidence of "custody" for purposes of escape conviction).

## IV.    Micalizzi Has Not Shown the Jury Instructions on the Aggravated Assault Charges Amounted to Fundamental Error.

¶18        Count 1 alleged Micalizzi committed aggravated assault with a dangerous instrument by intentionally placing M.A. in reasonable apprehension of imminent physical injury. *See* A.R.S. §§ 13-1203(A)(2), -1204(A)(2). Count 2 alleged Micalizzi committed aggravated assault by physically injuring M.A. knowing he was a peace officer. *See* A.R.S. §§ 13-1203(A)(1), -1204(A)(8)(a). The superior court instructed the jury as follows:

> The crime of assault requires the proof that the defendant:
>
> 1. Intentionally, knowingly, or recklessly caused a physical injury to another person; or
>
> 2. Intentionally plac[ed] another person in reasonable apprehension of imminent physical injury.
>
> [] The crime of aggravated assault requires proof of the following:
>
> 1. The defendant committed an assault, and
>
> 2. The assault was aggravated by at least one of the following factors:
>
> - The defendant used a deadly weapon or dangerous instrument;

- The defendant knew or had reason to know
that the person assaulted was a peace officer.

Micalizzi argues the instructions improperly amended the indictment such that the jury could have convicted him of aggravated assault offenses that were not charged. He also claims the instructions resulted in the possibility of non-unanimous verdicts as to each aggravated assault offense.

¶19    Micalizzi did not object to the jury instructions in superior court, thus he bears the burden on appeal of establishing fundamental error. *State v. Escalante*, 245 Ariz. 135, 138 ¶ 1 (2018). Satisfying that burden requires Micalizzi to prove either error resulting in prejudice, or that the error "was so egregious that he could not possibly have received a fair trial." *Id.* at 140 ¶ 12, 142 ¶ 21.

¶20    This court considers opening statements and closing arguments when evaluating the propriety of a trial court's jury instructions. *State v. Johnson*, 205 Ariz. 413, 417 ¶ 11 (App. 2003). During the opening statements and closing arguments, the prosecutor clearly explained the different elements exactly as charged separately in Counts 1 and 2. Thus, the prosecutor ameliorated any purported confusion caused by the aggravated assault instructions. Micalizzi does not rely on the record to contend otherwise. Instead, he merely speculates that the court's instructions resulted in an unfair trial or otherwise prejudiced him. Such speculation is insufficient to satisfy his burden under fundamental error review. *See Escalante*, 245 Ariz. at 144 ¶ 31 ("imaginative guesswork" insufficient under fundamental error review to show prejudice).

## CONCLUSION

¶21    Micalizzi's convictions and resulting sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:    AA

8